Good morning, Your Honors. May it please the Court, my name is Vikram K. Badranath, Counsel for the Petitioner, Mr. Romero-Ruiz. I'd like to reserve one minute for rebuttal, if I may. Your Honors, in this particular case, the petitioner is a 26-year-old individual. At the age of 4 years old in April of 1985, he did enter the United States. He's lived in this country for some 23 years. He has a United States citizen wife, a U.S. citizen mother, and two United States citizen children. In this particular case, the immigration judge and the Board of Immigration Appeals erred in failing to terminate removal proceedings on the basis that the petitioner is a United States citizen, under probation, pursuant to 8 U.S.C. 1432A5, upon the naturalization of his mother, before he reached the age of 18, and while he began residing permanently in the United States. If this Court were to remand the case for the petitioner to receive cancellation of removal relief under the Act. First, I'd like to address the citizenship issue, followed by the failure to remand issue. Your Honors, in this particular case, with respect to citizenship, the Court's task is one of statutory construction. One of the cardinal canons of statutory construction is that the Court must presume that a legislature says in a statute what it means, and it means what it says. This Court's task is simple. The statute here, in Section 321A5 of the Act, is plain and unambiguous. In the first section, citizenship is conferred upon a person who is residing in the United States, pursuant to a lawful admission for permanent residence at the time of naturalization. The second clause also confers citizenship upon a person thereafter the naturalization, if they begin to reside permanently in the United States after the age of 18. Now, clearly, these two phrases mean different things. Congress used different terminology, and clearly their intent was different. The Board of Immigration Appeals conflated the two terms and said, well, residing permanently really means pursuant to a lawful admission for permanent residence. We would argue that that goes beyond the plain language and the unambiguous terms of the particular statute involved. Now, again, Congress has presumed to act intentionally and purposefully when it includes language in one section and excludes it in another. If Congress intended the phrase residing permanently to mean a lawful admission for permanent residence, it simply could have said so. However, it did not in this particular case. In addition, to read residing permanently to mean the same as lawful admission for permanent residence would also render the second phrase unnecessarily duplicative because it would already be covered in the first phrase. Now, what does this phrase, residing permanently, mean? Well, this Court need only turn to the Sections 11831. Congress defined the term permanent to mean a relationship of continuing or lasting nature as distinguished from temporary. Under 1183, Congress also defined the term residing. Now, Mr. Romero has resided permanently in conjunction with the definition of the statute, and therefore he has derived U.S. citizenship under the Act. I'd also like to note that this language is not new. This language, residing permanently, has been in existence under the immigration statute since 1790 in some form or another. Earlier, it was codified as dwelling within the United States. It has been subsequently changed as of the Act of March 2, 1907, to mean residing permanently in the United States. Now, Congress is aimed at vesting citizenship when a person arrives in the United States. Jurisdiction can only vest when the person is on United States soil. And this is the reason why this language is first incorporated. I'd like to turn next to the issue of the failure to remand the Board of Immigration Appeals. I'm going to leave that. We have a non-presidential BIA decision, but why isn't that at least afforded Skidmore deference? Well, Your Honor, in this particular case, again, the language of the statute is plain and unambiguous. This Court need not defer to the Board of Immigration Appeals decision. There is no precedent issue with respect to this particular case. The 321A5 issue has never been addressed by the Board of Immigration Appeals in any deferential precedent decision. And this It's not a Chevron case, but it might be a Skidmore case, which is less deferential, but it's taken for what its persuasive worth is. Certainly, Your Honor, the BIA may have some special competence or expertise in interpreting the statutes, but again, it's the plain language and plain meaning of the statute that this Court must interpret. I'd like to turn next to the issue of cancellation. The Board of Immigration Appeals also violated the Petitioner's due process rights in failing to remand the case to the Board of Immigration Appeals. Now, in this particular case, Mr. Romero departed the United States while his application for adjustment of status was pending with the Immigration Service. He attempted to return unsuccessfully and was returned voluntarily to Mexico. He then successfully reentered the United States. At the time of Mr. Romero's Immigration Court proceedings, the existing precedence held that because Mr. Romero had been voluntarily returned to Mexico, his continuous physical presence in the U.S. had been meaningfully interrupted. The Board case was a matter of Romeles, which held that when an individual is compelled to depart the United States, his continuous physical presence is deemed to end. This Court also echoed that same reasoning in Vasquez Lopez v. Ashcroft that anyone who left the United States pursuant to voluntary departure could not continue to accrue time, continuous residence for cancellation or removal. However, after the immigration judge's decision in this case, in July of 2005, the law changed. There was a shift in the law. In August, one month later, 2005, the BIA clarified that were an alien departs the United States for less than the statutory period of 90 days or 180 days in the aggregate, and unsuccessfully attempts to reenter at the United States before actually reentering, physical presence continues to accrue. This Court also rejected the Board's earlier precedent in matter of Romeles in Tapia v. Gonzalez, decided in December of 2005. The Court reversed and found that being returned away at the border does not have the same effect as an administrative voluntary departure order and does not interrupt the approval of an alien's continuous physical presence for cancellation or removal purposes. Now, in this particular case, the petitioner sought remand back to the immigration judge. The Board denied saying the petitioner has not demonstrated prima facie eligibility. Well, in fact, in the record itself, the petitioner had demonstrated that he was prima facie eligible for this relief. We knew that he had been living in the United States for some 23 years. The statute requires 10 years of continuous physical presence. We knew that he had a qualifying relative, a U.S. citizen spouse, children, and a mother. We knew that he was a person of good moral character. The Board of Immigration Appeals makes some notion that in this particular case he had not demonstrated that he was a person of good moral character because the document expunging the conviction had not been submitted. That is, in fact, part of the record at AR-164 and also AR-255-260. So in this particular case, the petitioner had made out a prima facie case of eligibility for cancellation removal. Moreover, if the facts as alleged by the petitioner and combined with the facts in the record make it worthwhile for the Board to have developed the record that this was an issue, they simply could have remanded to the Board of Immigration Appeals for determination. I see that I'm out of time, Your Honor. Thank you. Thank you, counsel. May it please the Court, my name is Lauren Bissette and I represent the respondent in this case. The only issues that the Court needs to decide today are whether Mr. Romero qualified for derivative citizenship under former INA 321A and then whether the Board abused its discretion in denying his motion to remand. So I'll turn first to the derivative citizenship issue. Clearly, the statute is not ambiguous and it clearly shows that Mr. Romero does not qualify for derivative citizenship. The statute requires that the child, when his parent naturalizes, as in this case, be under 18, which he had, and then is residing in the United States pursuant to lawful admission for permanent residence at the time or thereafter begins to reside permanently. This statute is clearly saying that they need to be in lawful admission either at the time or after while under the age of 18. The statute is not ambiguous. That is clearly the intent of Congress. It's clear from the face that becomes a citizen. Mr. Romero has never been in lawful admission. He was not ever in lawful admission prior to 18 and still is not. The second clause of this section only alters the timing of when the person resides in the United States. It does not alter the legal requirement that they be residing lawfully. So your position is this is one, just purely a statutory construction, right? Yes, but the Board has interpreted this and their interpretation should definitely be given deference. Why? If the statute's unambiguous. Well, I first argue that it is not ambiguous at all. Both say it's unambiguous. You just disagree on what it means. True. But to the extent there is any ambiguity found, the Board's interpretation should be given deference, and the Board has stated that the statute requires lawful permanent residence. Well, at best it's Gidmore deference, wouldn't you agree? I mean, it's not a precedential decision, so Chevron's not at play. Regardless, the Board's interpretation should be given significant deference, and clearly the statute shows that lawful admission is a requirement. This is also showed congressional intent is further emphasized by the Child Citizenship Act of 2000, which repealed this section and deals with this issue of derivative citizenship for children, and that also requires lawful permanent residence before one can become a citizen. So Mr. Romero does not qualify because he was not in lawful status at the time that his mother naturalized, or any time after that before he turned 18, nor is he today. So moving on to the Board did not abuse its discretion in denying Mr. Romero's motion to remand. He requested cancellation of removal. The Board found he was not prima facie eligible for two significant reasons. The first and most important is that he did not submit an application for cancellation of removal. The requirements in the regulations at 8 CFR 1003.2c say that a request for relief must be accompanied by the appropriate application for relief, and this is necessary so that the Board can determine if he meets the requirements for eligibility for cancellation, and he did not submit an application for cancellation of removal. Second, the Board also found that he failed to meet his burden of showing eligibility because he has a controlled substance conviction, and he alleges that it's been expunged, but he did not provide information showing that this has been expunged. The only thing that Petitioner did provide was his unsigned request that his conviction be expunged, and then an uncertified criminal docket sheet that vaguely references that an order was set aside, but this does not show that this particular conviction was expunged, and therefore he didn't meet his burden of showing that. And then he didn't file an application. So the Board absolutely did not abuse its discretion in denying this motion to remand where he failed to show prima facie eligibility for this relief. I think we have your argument in hand. Thank you for your argument. Thank you. You have about two minutes. Thank you. The practical effect of your reading the statute the way you do under 5 is that once the earlier conditions are satisfied, the naturalization of the mother, the naturalization takes place while such child is under the 18, let's assume at this point that the child is not in the United States at the time of the naturalization. So if the person then comes across the border unlawfully and begins to reside permanently, that's enough. Your Honor, that's an excellent question. I think the way to answer that is by looking simply to what Congress intended. The statute notes residing permanently. What does that mean? We need only look to the definitions under the Act, Sections 101-831, 101-833 of the Act. It does not require a lawful admission. But I mean, so you're saying Congress fully contemplated under these circumstances, somebody could say, well, okay, now I'll get in a tunnel and sneak across the border and I become a citizen. Well, I don't know. It doesn't make any sense. I don't know if Congress contemplated that exact situation, Your Honor, but what I think Congress was trying to say is that if a person has a child born outside the U.S., that individual is then naturalized in the United States, and the child later comes to the United States, that child derives U.S. citizenship upon the father or mother's naturalization. So your answer is yes, it's perfectly appropriate. The child is living in Mexico, then violates American law, and therefore becomes an American citizen. Well, I think when Congress passed this particular statute, they may not have considered that particular issue. There is a Supreme Court case that's quite old. It's from 1809, Campbell v. Gordon, which talks about these particular interplay of the statutes. In that particular case, the court did find if a person does come to the United States and they're residing permanently after the naturalization, they do acquire citizenship. If you're right, why do they say then in the first part of 5, pursuant to a lawful admission from permanent residence? If your construction of the words after or is right, why does it make any difference in the first part, whether the admission is lawful or not? I think that because there are two different ways Congress wanted the individual to derive citizenship. If before the naturalization the person was in the United States and they also had a lawful admission for permanent residence, that was one way they could become a citizen. In addition, the second way was if a person thereafter began residing after the naturalization, they also derived U.S. citizenship. It's the clear language of the statute which controls in this particular case, and we would find that the petitioner did, in fact, derive United States citizenship. We ask the court to remand with instructions to the Board of Immigration Appeals to terminate these proceedings. Thank you, Your Honor. Thank you, counsel.
judges: Trott, Thomas, Hogan